IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | | |
|---|---|---|
| **DELAINA SIMPSON**, on behalf of herself and others similarly situated, | : : : | CASE NO. 1:23-cv-00397 |
| Plaintiff, | : : | **JUDGE CHARLES ESQUE FLEMING** |
| v. | : : : | **MAGISTRATE JUDGE THOMAS M. PARKER** |
| **RHENIUM ALLOYS, INC.**, | : : | **JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND BRIEF IN SUPPORT** |
| Defendant. | : : : | |

Representative Plaintiff Delaina Simpson ("Representative Plaintiff") and Defendant Rhenium Alloys, Inc. ("Defendant") (collectively the "Parties") respectfully and jointly move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. Representative Plaintiff's Rule 23 claims, which were not certified by this Court, are being dismissed without prejudice.[1] The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations with the assistance of a private mediator.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement")[2] with the following Exhibit:

**Exhibit 1-A**: Notice of Settlement of Collective Action Lawsuit and Consent Form and Release.

**Exhibit 2**: Declaration of Matthew J.P. Coffman (hereinafter "Coffman Decl."); and

**Exhibit 3**: Proposed Stipulated Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice.

---

[1] Although these claims are dismissed without prejudice, Representative Plaintiff, Current Opt-In Plaintiffs and Claimants have released all Ohio claims against Defendant through the settlement.
[2] Unless otherwise noted, all capitalized words and phrases used throughout this motion and brief shall have the same meaning as set forth in the Collective Action Settlement Agreement and Release.

Page **1** of **14**

## MEMORANDUM IN SUPPORT

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.     **Summary of the Claims and Procedural History**

On February 28, 2023, Representative Plaintiff filed this case (the "Lawsuit" or the "Action") against Defendant on behalf of herself and other allegedly similarly situated current and former healthcare employees. Compl., ECF No. 1; Coffman Decl., Ex. 2, ¶ 9.

In the Action, Representative Plaintiff alleged that Defendant failed to pay production employees overtime for all hours worked in excess of forty (40) in one or more workweek(s) in violation of the Fair Labor Standards Act, §§ 201, *et seq.* Specifically, Representative Plaintiff alleged that Defendant violated the FLSA by failing to pay production employees all overtime wages owed as a result of Defendant allegedly implementing unlawful rounding policies to calculate time spent working. Compl., ECF No. 1, ¶¶ 24–41; Coffman Decl., Ex. 2, ¶ 11. Representative Plaintiff further alleged that she was terminated from her employment with Defendant in January 2023 as retaliation for making inquiries and complaints about the legality of the aforementioned rounding policies over the preceding weeks and months. Compl., ECF No. 1, ¶¶ 78–98; Coffman Decl., Ex. 2, ¶ 11. After the Complaint was filed, the following individuals have joined the case to date: Patricia Jirousek, Janelle Showalter, Holly Blas, Jacob Barber, Megin Miether, Violet Golembiewski, and Elaine Johnson (collectively "Current Opt-In Plaintiffs").

Defendant denies these allegations and asserts that it properly paid its production employees for all hours worked. Defendant further denies that it engaged in any retaliation against Representative Plaintiff.

On July 11, 2023, the Parties filed a Joint Motion to Vacate Case Management Conference because they agreed to mediate this dispute with a private mediator. ECF No. 12. The Court granted that Motion. ECF No. 13.

The Parties mediated this case with Jerome F. Weiss ("Mediator Weiss") on August 17, 2023. Prior to the mediation, Defendant provided time and compensation records for Representative Plaintiff, Current Opt-In Plaintiffs, and other production employees that Representative Plaintiff contends are similarly situated, to wit, all current and former hourly, non-exempt production employees of Defendant[3] who were paid for at least forty (40) hours of work in any workweek that they were subjected to Defendant's allegedly unlawful time clock rounding policy or practice from February 28, 2020 to May 6, 2023. Class Counsel, with the assistance of its consultant, performed a damages analysis using this information. Due to several deficiencies with the data that only became apparent at the mediation, the parties agreed to schedule a second session after further data could be gathered and exchanged. Coffman Decl., Ex. 2, ¶¶ 12.

After exchanging additional data and updating the damages analysis, the Parties mediated again with Mediator Weiss on November 27, 2023. Over the course of most of the day, the Parties were able to come to an Agreement. *Id.*, ¶¶ 13.

**B.     Summary of the Key Settlement Terms**

The total settlement amount is $150,000.00. This amount includes: (a) all potential individual settlement payments to approximately 186 Eligible Settlement Participants,[4] inclusive of Representative Plaintiff and Current Opt-In Plaintiffs; (b) an individual settlement payment of $20,000.00 to Representative Plaintiff as settlement of her individual FLSA retaliation claims; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the Settlement Administrator Costs. *Id.*, ¶ 14.

---

[3] Including Representative Plaintiff and Current Opt-In Plaintiffs.
[4] Eligible Settlement Participants will receive a settlement payment if they timely submit a consent form, which will be filed with the Court, as outlined in the Collective Action Settlement Agreement and Release. Those who do not submit a timely consent form will not release their claims and will not receive their potential Settlement Award, which will remain the property of Defendant.

A Notice of Settlement (attached to the Agreement) and Consent Form and Release ("Consent Form") will be sent to the Eligible Settlement Participants. Eligible Settlement Participants who timely complete, sign, and submit a valid and timely Consent Form, which will be filed with the Court by Class Counsel, will become Claimants. Only those Eligible Settlement Participants who join the settlement by timely submitting a Consent Form will be bound by the Agreement. *Id.*, ¶ 15.

The potential Settlement Awards are proportional to the total calculated alleged damages for an alleged 3-year statute of limitations for each Eligible Settlement Participant. Each individual Settlement Award represents over 110% of the total calculated alleged damages for a 3-year statute of limitations for each Eligible Settlement Participant. The Settlement Awards represents a pro rata share of the damages related to the alleged improper rounding policies and or practices during qualifying weeks. Each Eligible Settlement Participant shall be eligible to receive a minimum Settlement Award of $10.00 if their calculated proportional share is less than that amount. This type of allocation is commonly used in class and collective action settlements. *Id.*, ¶ 16. This recovery is fair and reasonable given the facts and circumstances of this case.

In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this Lawsuit will be dismissed with prejudice, and the Claimants (including Representative Plaintiff and Current Opt-In Plaintiffs) who timely submit a Consent Form will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit. *Id.*, ¶ 17.

II.  **PROPRIETY OF APPROVAL OF THE SETTLEMENT.**

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

    A.  **Satisfaction of 7-Factor Standard**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enters., Inc.*, No. C2-05-500, 2008 WL 2468868, at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven (7) factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499, at *3.

The settlement in this Action satisfies each of these elements.

1. *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 WL 4913678, at *3 (N.D. Ohio Oct. 10, 2018) (internal quotation marks and further citation omitted). The Agreement was achieved only after arm's-length and good faith negotiations between the Parties, with the assistance of Mediator Weiss. Coffman Decl., Ex. 2, ¶ 20. "The participation of an independent mediator in the settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the

parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). As such, there is no indicia of fraud or collusion, and this factor favors approval of the Settlement.

        2.       *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (internal quotation marks and further citation omitted) ("[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."). Moreover, the Parties disagree over the merits of Plaintiffs' claims, as well as whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and whether Plaintiffs would be entitled to liquidated damages if they were to prevail on the merits.

If this Action had not settled, the Parties would be required to engage in costly litigation, such as briefing on the issuance of notice, formal written discovery, depositions, dispositive motions, trial, and potential appeals. The Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently and amplifies the benefits of that relief through the economies of collective resolution. Coffman Decl., Ex. 2, ¶ 23.

        3.       *Investigation Was Sufficient to Allow the Parties to Act Intelligently.*

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendant produced all necessary payroll and timekeeping information for the Eligible Settlement Participants. Class Counsel engaged the services of a consultant to build a damages model, which was instrumental in guiding Representative Plaintiff's negotiations. *Id.*,

¶¶ 12-13. These steps were repeated with updated data after deficiencies were identified during the first mediation session.

In addition, the Parties assessed their potential risk of loss, and thoroughly researched the legal and factual issues in the case. All aspects of the dispute are therefore well understood by both sides.

### 4. *The Risks of Litigation Favor Approval.*

Counsel for both sides believe in the merits of their clients' positions, while also recognizing that continued litigation will be uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises various defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that the Plaintiffs could receive no compensation or, if they do receive any compensation, it will be only after protracted litigation. By settling the case at this relatively early stage of the litigation, the Parties bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the Settlement. *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *6 (S.D. Ohio Sept. 25, 2020) (Rice, J.) ("the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor").

### 5. *The Opinion of Representative Plaintiff's Counsel Favor Approval.*

Class Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and have vigorously represented the interests of the Eligible Settlement Participants, which include Representative Plaintiff and Current Opt-In Plaintiffs. Importantly, Class Counsel opines that the settlement is fair, reasonable, adequate, and in the best interests of Representative Plaintiff, Current Opt-In Plaintiffs, and Eligible Settlement Participants Coffman Decl., Ex. 2, ¶¶ 21. "The recommendation of Class Counsel, skilled in class actions and

corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright*, 2018 WL 3966253, at *5 (further citation omitted). Accordingly, this factor favors approval of the settlement.

6. *The Reaction of Absent Class Members Favors Approval.*

If the Court approves the settlement, the Eligible Settlement Participants will receive a Notice of Settlement and Consent Form. They will be given the option to join the Settlement by timely submitting their signed Consent Form. Only those Eligible Settlement Participants who join the Settlement by timely submitting their signed Consent Form will be bound by the Agreement. Those Eligible Settlement Participants who do not join the Settlement will not receive their potential Settlement Award, and they will retain the right to pursue their own claims. Coffman Decl., Ex. 2, ¶ 17.

7. *The Public Interest Favors Approval.*

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Here, rather than face the risk and uncertainty of continued litigation, the Settlement confers immediate benefits on the Plaintiffs, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

**B.** **The Settlement Distributions Are Fair, Reasonable, and Adequate.**

In addition to evaluating the seven (7) factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *6 (S.D. Ohio Sept. 9, 2016) (Marbley, J.) (internal quotation

marks and further citation omitted). Here, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for Plaintiffs.

        1.     *The Individual Payments Are Reasonable and Adequate.*

The Settlement compensates Plaintiffs for alleged unpaid overtime wages on a pro rata basis based on the amount of alleged unpaid overtime owed to Plaintiffs as calculated by Plaintiffs' Counsel. "This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds." *Satterly*, 2020 WL 6536342, at *8. As such, each Claimant will receive over 110% of their rounding damages. Coffman Decl., Ex. 2, ¶ 16. This recovery is fair and reasonable given the facts and circumstances of this case. *See Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *4-5 (S.D. Ohio Dec. 2, 2016) (approving a settlement that represented approximately 55% of allegedly owed wages); *See Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)).

All Settlement Awards will be calculated proportionally. Coffman Decl., Ex. 2, ¶ 16. As such, each Eligible Settlement Participant will have the opportunity to obtain compensation for alleged unpaid wages that are proportional to the damages calculated by Class Counsel.

        2.     *Representative Plaintiff's Individual Settlement Payment Is Reasonable.*

The Agreement provides for an Individual Settlement Payment of $20,000.00 to Representative Plaintiff for settlement of her retaliation claim in addition to her individual payment from the unpaid overtime claim. *Id.*, ¶ 18. This payment represents Representative Plaintiff's accrued back pay during the time period she was unemployed, and represents a reasonable settlement of her individual claims in this action.

Additionally, while each of the other Eligible Settlement Participants will only be releasing their federal and state wage and hour claims against Defendant, Representative Plaintiff will be signing a general release and waiver against Defendant for all claims known or unknown at this time, in accordance with the Agreement. Representative Plaintiff's Individual Settlement Payment is reasonable as consideration for her signing a general release.

Lastly, Representative Plaintiff is *not* seeking an additional service award in addition to her individual settlement payments. Courts routinely approve service awards to representative plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Here, Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Plaintiffs' Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. She is foregoing a request for a service award in recognition of her own substantial Individual Settlement Payment however, once again putting the interests of the collective above herself.

Accordingly, Representative Plaintiff's Individual Settlement Payment for her retaliation claim is reasonable.

       3.    <u>*The Attorneys' Fees to Class Counsel Are Proper and Reasonable.*</u>

After the Court has confirmed that the terms of the Settlement are fair to the Eligible Settlement Participants, it may review the Agreement as to the provision of fees and litigation expenses to Class Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the

action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Agreement provides a payment of attorneys' fees to Class Counsel in the amount of one-third (1/3) of the total settlement amount, i.e., $50,000. "The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement." *Satterly*, 2020 WL 6536342, at *10 (citing *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993)). Indeed, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share…." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010).

This conclusion was recently reiterated in *Harsh v. Kalida Mfg.*, No. 3:18-cv-2239, 2021 WL 4145720 (N.D. Ohio Sep. 13, 2021). In *Harsh*, the Court held that while a court can utilize either the percentage-of-the-fund or the lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *8. The Court further noted that the lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* In

contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

A one-third fee award is "typical for attorney's fees in common fund, FLSA collective actions..." *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.); *see Harsh*, 2021 WL 4145720, at *8. This requested attorneys' fees amount "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018)); *see also Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 (N.D. Ohio Mar. 26, 2019) (same).

Furthermore, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.).

    4. <u>*The Court Should Authorize Reimbursement to Class Counsel of Its Out-of-Pocket Expenses Incurred in this Case.*</u>

Class Counsel should also be reimbursed their litigation expenses, which as of the date of this Joint Motion are $7,867.02. Coffman Decl., Ex. 2, ¶ 19.

"Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, at *7 (further citation omitted). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.* (further citation omitted). Because Class Counsel's litigation expenses were incurred in

the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Class Counsel.

### III.  CONCLUSION

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the Proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Class Counsel's request for attorneys' fees and expenses; (3) approve the payment to the Settlement Administrator; and (4) retain jurisdiction to enforce the settlement if necessary.

Respectfully Submitted,

| **COFFMAN LEGAL, LLC** | **REMINGER CO., LPA** |
|---|---|
| */s/ Tristan T. Akers*<br>Matthew J.P. Coffman (0085586)<br>Adam C. Gedling (0085256)<br>Kelsie N. Hendren (01000041)<br>Tristan T. Akers (0102298)<br>1550 Old Henderson Road<br>Suite 126<br>Columbus, Ohio 43220<br>Phone: 614-949-1181<br>Fax: 614-386-9964<br>Email: mcoffman@mcoffmanlegal.com<br>        agedling@mcoffmanlegal.com<br>        khendren@mcoffmanlegal.com<br>        takers@mcoffmanlegal.com<br><br>*Attorneys for Named Plaintiff and those similarly situated* | */s/ James O'Connor*<br>James O'Connor (0063428)<br>Jonathan H. Krol (0088102)<br>101 West Prospect Avenue, Suite 1400<br>Cleveland, Ohio 44115<br>(216) 687-1311<br>joconnor@reminger.com<br>jkrol@reminger.com<br><br>*Attorneys for Defendant Rhenium Alloys, Inc.* |

### CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January 2023 a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Tristan T. Akers*
Tristan T. Akers